**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAMES WEESE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL NO. 07-581-GPM |
| | ) |
| UNION CARBIDE CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

### I. INTRODUCTION

This is an asbestosis lawsuit brought by Plaintiff James Weese against some one hundred and

nineteen Defendants.  Weese's claims, which are derived solely from state law, arise out of

asbestos-related personal injuries he allegedly has suffered.  Weese originally filed his claims in

Illinois state court.  However, after an amended complaint joining as a party Defendant

Union Carbide Corporation ("Union Carbide") was filed in state court, within thirty days after

service of the complaint Union Carbide removed the entire action to this forum pursuant to 28

U.S.C. 1331 and 28 U.S.C. § 1442(a)(1), and requested a stay of these proceedings pending transfer

of this action to a multidistrict litigation ("MDL") proceeding in the United States District Court for

the Eastern District of Pennsylvania (Doc. 3, 5).  Weese in turn filed a motion for remand of this

case to state court for lack of subject matter jurisdiction (Doc. 34).  For the reasons stated below,

Union Carbide's request for a stay of these proceedings is **DENIED** and Weese's request for remand

of this case to state court for lack of subject matter jurisdiction is **GRANTED**.

The following facts are germane to this Order.  Weese worked as a professional pipefitter,

Page 1 of  18

laborer, and welder from the early 1940s to the early 1990s.  During his career, he worked at United States government facilities in Oak Ridge, Tennessee, that were managed, operated, and maintained by Union Carbide pursuant to contracts with the Atomic Energy Commission and the Department of Energy.  Weese maintains that during his employment at the Oak Ridge facilities, he was exposed to asbestos particles emitted into the air.  He alleges that he inhaled these particles and that, as a consequence, he contracted mesothelioma, a cancer of the lung lining linked to asbestos exposure.  Union Carbide does not challenge Weese's assertion that he was exposed to asbestos while working at the Oak Ridge facilities.   However, Union Carbide contends that, in its management of the Oak Ridge facilities, it acted under the direction of federal officers, and that the actions that it took were in accordance with precise specifications and detailed regulations promulgated by those agencies.

## II. ANALYSIS

### A.    Stay of Proceedings

As noted, Union Carbide has requested that the Court stay this litigation, including the motion to remand, pending transfer of this case to the MDL asbestos docket in the Eastern District of Pennsylvania.  The Court concludes that the requested stay should be denied.  The issue presented by the motion to remand, i.e., whether Union Carbide properly removed this action under 28 U.S.C. § 1442(a)(1) does not raise issues exclusively within the area of expertise of the MDL court.  This Court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court.  Where, as here, the motion to remand does not "implicate[ ] issues that are within the exclusive jurisdiction of the MDL Court . . . the motion[ ] to remand can be resolved without encroaching on the exclusive territory of the MDL Court." *In re Massachusetts Diet Drug Litig.*,

338 F. Supp. 2d 198, 201 (D. Mass. 2004).  Under such circumstances, a stay is not warranted.
*See id.  See also Greene v. Wyeth*, 344 F. Supp. 2d 674, 678-79 (D. Nev. 2004) (noting that the
purpose of the statute governing transfer to MDL proceedings, 28 U.S.C. § 1407, is not furthered
by referring to a transferee court issues of law that the transferor court is equally competent to
decide); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004)
(holding that a stay pending transfer of a case to an MDL proceeding would be "judicially
inefficient" where "[t]his Court is readily familiar with federal law, Ninth Circuit law, and California
law, the laws applicable to Plaintiff's motion [for remand] and Complaint."); *Meyers v. Bayer AG*,
143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001) (holding that a stay of proceedings pending transfer
to an MDL court generally should be denied where a transferor court's "preliminary assessment"
of a notice of removal suggests that a case was improperly removed).

Moreover, the resolution of the motion to remand requires an analysis of the unique facts of
this case as presented to this Court.  The issue is whether Union Carbide met its burden of proving
the elements necessary for removal under 28 U.S.C. § 1442(a)(1).  "The same degree of judicial
resources must be expended here or in the District of [Pennsylvania] to make an assessment of which
party should prevail." *Pennsylvania v. Tap Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 521 (E.D. Pa.
2005).  Since only one federal court needs to "make an individualized assessment of the
jurisdictional issues in this case" there is no reason to transfer the jurisdictional issue to the MDL
court. *Id.  See also Minnesota v. Pharmacia Corp.*, No. 05-1394 (PAM/JSM), 2005 WL 2739297,
at *2 (D. Minn. Oct. 24, 2005) ("[G]ranting a stay solely based on the existence of a factually-related
MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction,
would run counter to established case law, congressional intent, and . . . Rule 1.5 [of the Rules of

Procedure of the Judicial Panel on Multidistrict Litigation], all of which contemplate a district court will act to resolve threshold jurisdictional concerns[.]"). *Cf. Dean v. Eli Lilly & Co.*, Civil Action No. 06-1375 (EGS), 2007 WL 1589496, at *4 n.2 (D.D.C. June 1, 2007) (in the context of a motion for transfer under 28 U.S.C. § 1404, holding that it was a factor weighing against transfer that the same legal question regarding the statute of limitations would have to be decided regardless of whether the case was transferred or not). Finally, the Court sees no reason to require Weese to suffer the undeniable delays inherent in all MDL asbestos cases unless there is federal jurisdiction. To undergo such a lengthy process to find out that there is no federal jurisdiction would be frankly unjust, in view of Weese's serious medical condition. For all these reasons, the Court concludes that Union Carbide's request for a stay should be denied.

> **B.    Propriety of Removal**

> **1.    Legal Standard**

A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. *See Meridian Sec. Ins. Co. v.. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006); *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006). Federal removal jurisdiction is statutory in nature and is to be strictly construed. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). Removal is proper if it is based on permissible statutory grounds and if it is timely. *See Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004); *Mills v. Martin & Bayley, Inc.*, Civil No. 05-888-GPM, 2007 WL 2789431, at *2 (S.D. Ill. Sept. 21, 2007). Any doubts about the propriety of removal must be resolved against removal and in favor of remand to state court. *See Clevenger v. Eastman Chem. Co.*,

No. 07-cv-148-DRH, 2007 WL 2458474, at *1 (S.D. Ill. Aug. 24, 2007); *Littleton v. Shelter Ins. Co.*,

No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000).

### 2.  Federal Officer Removal

At the outset, the Court notes that Union Carbide recently filed a notice purporting to

withdraw its notice of removal, apparently conceding that federal subject matter jurisdiction does

not exist in this case.  This is a telling admission, of course, but it nevertheless is the rule that the

existence or non-existence of subject matter jurisdiction in a given case does not hinge on the

representations of parties to the case. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de*

*Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction

upon a federal court.  Thus, the consent of the parties is irrelevant, principles of estoppel do not

apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the

proceedings.  Similarly, a court, including an appellate court, will raise lack of subject-matter

jurisdiction on its own motion.") (citations omitted); *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir.

1980) ("A corollary of the principle of the limited jurisdiction of the federal courts is that

jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or

estoppel."). *Cf. Swift & Co. v. United States*, 276 U.S. 311, 324 (1928) (even judgments entered by

consent may be challenged on appeal for want of subject matter jurisdiction)); *Fraenkl v. Cerecedo*,

216 U.S. 295, 302-03 (1910) (same).  Correspondingly, a federal court "has an independent duty to

satisfy itself that it has subject-matter jurisdiction."  *Hammes v. AAMCO Transmissions, Inc.*, 33

F.3d 774, 778 (7th Cir. 1994). *See also Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.

1986) ("[T]he federal courts are obliged to police the constitutional and statutory limitations on their

jurisdiction.  That is why, even at the appellate level, the court must satisfy itself that there is federal

jurisdiction over the case."); *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 WL 2746612, at \*1 (S.D. Ill. Sept. 18, 2007) ("The limited nature of federal subject matter jurisdiction imposes on federal courts a duty to examine their jurisdiction at every stage of a proceeding, sua sponte if need be."); *Capital Fed. Sav. of Am. v. Geldermann & Co.*, No. 86 C 9232, 1987 WL 7270, at \*1 (N.D. Ill. Feb. 24, 1987) ("[T]his Court has an independent duty to ascertain its subject matter jurisdiction . . . . Therefore, the Court must determine if . . . a federal question is presented by this action.").  In an abundance of caution, the Court has undertaken a detailed inquiry into whether the record of this case discloses the existence of federal subject matter jurisdiction, and concludes that it does not.

Under 28 U.S.C. § 1442, a defendant can remove "[a] civil action . . . commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office[.]"  28 U.S.C. § 1442(a)(1).  As the statute makes clear, the right of removal extends not only to federal officers but to persons acting under such officers. To effect removal as a person acting under a federal officer, Union Carbide must prove three elements:  (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Weese's claims and the acts Union Carbide performed under the direction of a federal officer; and (3) Union Carbide has a colorable federal defense to state-law liability.  *See Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431 (1999); *Mesa v. California*, 489 U.S. 121, 129 (1989); *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981).  The basic purpose of Section 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal officers.  *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969);

*Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977). Because federal officer removal is rooted in "an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit," although such jurisdiction is read "expansively" in suits involving federal officials, it is read narrowly where, as in this instance, only the liability of a private company purportedly acting at the direction of a federal officer is at issue. *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150, 1152 n.6 (D. Colo. 2002) (emphasis omitted). *See also New Jersey Dep't of Envtl. Prot. v. Viacom, Inc.*, Civil Action No. 06-1753 (HAA), 2006 WL 3534364, at *2 (D.N.J. Dec. 7, 2006).

Removal under 28 U.S.C. § 1442(a)(1) presents certain exceptions to the normal run of cases removed on the basis of an issue of federal law. First, removal under Section 1442(a)(1) can be effected by any defendant in an action, with or without the consent of co-defendants. *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981). Additionally, in contrast to the familiar "well-pleaded complaint" rule which generally permits removal of a case on the basis of an issue of federal law only when that issue appears on the face of a plaintiff's complaint, *see Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983); *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995), removal under Section 1442(a)(1) is authorized on the basis of defenses arising under federal law. As the Supreme Court of the United States has explained, the statute governing federal officer removal belongs to the class of "pure jurisdictional statutes which seek 'to do nothing more than grant jurisdiction over a particular class of cases'" and therefore "cannot support . . . arising under . . . jurisdiction" within the meaning of Article III of the United States Constitution. *Mesa*, 489 U.S. at 136 (quoting *Verlinden B.V. v.*

*Central Bank of Nigeria*, 461 U.S. 480, 496 (1983)).  Thus, while the statute "grant[s] district court jurisdiction over cases in which a federal officer is a defendant," it does not, however, "independently support Art. III 'arising under' jurisdiction." *Id.*  This is why, in addition to being a federal officer or a person acting under the direction of such an officer, a defendant seeking removal under Section 1442(a)(1) must aver a "colorable federal defense" to support removal.  *Id.* at 129.  In other words, a defendant who is able to meet the requirements for removal under Section 1442(a)(1) "gain[s] access to federal court [even] where no federal question is presented by the plaintiff."  *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992).  Importantly, a federal defense sufficient to permit removal under the statute need only be colorable, not guaranteed to prevail.  *See Mesa*, 489 U.S. at 133; *Willingham*, 395 U.S. at 406-07.  Finally, where a case is properly removed under Section 1442(a)(1) the effect is to remove the entire case, even though only one of its controversies might involve a federal officer or agency.  *See District of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132-33 (D.C. Cir. 1985); *Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984); *State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989); 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3727 (3d ed. 1998 & Supp. 2007) (collecting cases).

With respect to the first element of the test for federal officer removal, whether Union Carbide is a "person" within the meaning of 28 U.S.C. § 1442(a)(1), the Court concludes that this requirement is met.  Although some courts have held that a corporation is not a person for purposes of the federal officer removal statute, *see, e.g., Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F. Supp. 726, 739 (S.D. Tex. 1997); *Krangel v. Crown*, 791 F. Supp. 1436, 1439-46

(S.D. Cal. 1992), the Court agrees with the weight of authority holding that corporations are persons for purposes of federal officer removal. *See, e.g., Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989); *Davidson v. Arch Chems. Specialty Prods., Inc.*, 347 F. Supp. 2d 938, 941 (D. Or. 2004); *Guckin v. Nagle*, 259 F. Supp. 2d 406, 416 (E.D. Pa. 2003); *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 711 (E.D. Tex. 1998); *Jones v. Three Rivers Elec. Coop.*, 166 F.R.D. 413, 414 (E.D. Mo. 1996); *Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996); *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994); *Ryan*, 781 F. Supp. at 946; Kristine Cordier Karnezis, Annotation, *Who Is "Person Acting Under" Officer of United States or Any Agency Thereof for Purposes of Availability of Right to Remove State Action to Federal Court Under 28 U.S.C.A. § 1442(a)(1)*, 166 A.L.R. Fed. 297 (2000) (collecting cases). Where the removal of this action founders is on the other two elements of the standard, namely, acting under the direction of a federal officer and the presentation of a colorable federal defense.

### a.      Acting under a Federal Officer

For purposes of the "acting under" requirement of 28 U.S.C. § 1442(a)(1), this element, as noted, entails a showing of a causal nexus between acts taken by Union Carbide at the direction of a federal officer and the injury of which Weese complains. Under the "regulation plus" standard for acting under a federal officer embraced by this Circuit, a causal nexus is established by showing that complained-of conduct was undertaken at the express direction of a federal officer. For example, in *Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994), the United States Court of Appeals for the Seventh Circuit affirmed removal under Section 1442(a)(1) of a suit for extortion brought by an operator of video poker machines against an agent of the Illinois Liquor Control Commission who

solicited a bribe from him, where the defendant claimed that he solicited the bribe at the direction of agents of the Federal Bureau of Investigation, which was conducting a sting operation against the plaintiff. *See id*. at 210-12.  As the United States Supreme Court has instructed, to show the propriety of removal under Section 1442(a)(1), "[t]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution." *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)).  "It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and *he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty*."  *Id*. at 131-32 (emphasis added). *See also Freiberg*, 245 F. Supp. 2d at 1155 ("What [removing defendants] must establish for purpose of [Section] 1442(a)(1) is that the government authority under which they worked required them to act as they did," that is, "they must establish the [government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation[.]").

In the specific context of cases involving, as here, allegations of personal injuries caused by asbestos due to failure to warn, to establish the requisite causal nexus for removal purposes a defendant must show that the government prevented it from issuing adequate warnings regarding exposure to asbestos.   For example, in *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E.D. Tex. 1999), the court rejected an attempt by owners of property on which the plaintiffs allegedly were exposed to asbestos to remove the plaintiffs' claims under 28 U.S.C. § 1442(a)(1).  The court noted first that the gravamen of the plaintiffs' claims was that the premises operated by the removing defendants were unsafe, not that the defendants had designed, manufactured, or distributed a defective product under the direction of a federal officer.

"Defendants seek to transmogrify their entire facilities into huge 'products' whose specifications were dictated by a federal officer."  48 F. Supp. 2d at 662.  However, the court noted, "[t]his is a premises liability case – not a products case; and Defendants' attempt to transmogrify their entire facilities (i.e., their premises) . . . into 'products' misapplies precedent and fails the second prong of the . . . test" of federal officer removal.  *Id.* at 660 (emphasis omitted).  The court concluded that the federal officer removal statute does not permit a defendant "to shroud an entire facility from state-law claims simply because a federal officer dictates the specifications of the product manufactured there"; rather, a proper exercise of such jurisdiction must "tether the defendants' actions under the color of federal office to the plaintiffs' claims, thereby establishing the causal nexus necessary to support the second prong of the . . . test" of federal officer removal.  *Id.* at 662. Obviously, the same concern applies with equal force in this case.  It appears from the record that Union Carbide regards every action it took at the Oak Ridge facilities that it managed as having been undertaken at the direction of a federal officer.  However, Section 1442(a)(1) does not authorize removal on the basis of such vague allegations of federal control.  Instead, it is Union Carbide's burden to show that it took actions at the specific direction of a federal officer, and that those actions caused the injuries alleged by Weese in this case.

More importantly, the *Faulk* court held that, even assuming that the defendants' premises could be considered products, there was no evidence to sustain a causal nexus because nothing in the record suggested that the government prevented the defendants from furnishing adequate warning about the dangers of exposure to asbestos.  The court said: "Causal nexus?  Of course not. Why not?  Because the federal government provided no direction or control on warnings when using asbestos; moreover, the federal government did not prevent Defendants from taking their own safety

precautions heeding state-law standards above the minimum standards incorporated in their federal contracts." 48 F. Supp. 2d at 663. "Indeed, of all the myriad of documents removing Defendants submitted to this Court, there is no direction or control by the federal officer relating to warning Plaintiffs about asbestos." *Id*. at 664. "Here, there is no federal officer 'direction' or 'control' as to whether to warn Plaintiffs about asbestos. Rather, there are detailed, government specifications relating to the production of Avgas, butadiene, and steel – nothing about warning about asbestos. The federal officer remained completely silent as to whether to warn about the use of asbestos; this silence is fatal to the 'causal nexus' necessary for the second prong" of the test for federal officer removal. *Id*. (emphasis omitted). The court concluded that "Defendants seek to shroud their entire facilities from state-law claims simply because the federal government controlled products manufactured there." *Id*. at 670 (emphasis omitted). However, "[a]lthough Defendants 'arguably 'acted under' the [federal government's] direction when working by detailed instructions . . .' to produce Avgas, butadiene, and steel,' . . . [t]he federal government provided no direction on warnings when using asbestos, and further did not prevent [Defendants] from taking [their] own safety precautions above the minimum standards incorporated in the federal contracts." *Id*. (quoting *Mouton v. Flexitallic, Inc.*, No. CIV. A. 99-0162, 1999 WL 225438, at *3 (E.D. La. Apr. 14, 1999)). Accordingly, the court found that the removing defendants had failed to show a causal nexus sufficient to satisfy the acting under prong of the test for federal officer removal. *See id*.

As *Faulk* illustrates, to establish the causal nexus sufficient to satisfy the acting under prong of the test for federal officer removal, a removing defendant must show that "the federal officer really did 'make them do it[.]'" 48 F. Supp. 2d at 664. Here Union Carbide has adduced no evidence that a federal officer prevented it from furnishing adequate warnings about the dangers of

exposure to asbestos.  Accordingly, the Court concludes that the second prong of the test for federal

officer removal is not satisfied in this case.  *See Freiberg*, 245 F. Supp. 2d at 1155 (holding that

defendants seeking removal under 28 U.S.C. § 1442(a)(1) failed to show a causal nexus between

acts taken under the direction of federal officers and the plaintiffs' personal injuries due to exposure

to asbestos:  "For purposes of Plaintiffs' failure to warn claims . . . [the defendants] must establish

[that the government's] direction and control of their activities directly interfered with their ability

to fulfill their state law obligation to warn employees of safety hazards."); *Gauthe v. Asbestos Corp*.,

No. Civ. A. 96-2454, 1997 WL 3255, at *3 (E.D. La. Jan. 2, 1997) (finding federal officer removal

improper because "[t]here is no evidence that the Government restricted or prohibited [the

defendant's] ability to notify individuals of the presence of asbestos in the work environment.");

*Overly v. Raybestos-Manhattan*, No. C-96-2853 SI, 1996 WL 532150, at *4 (N.D. Cal.

Sept. 9, 1996) (holding that a defendant failed to show a causal nexus between actions allegedly

taken at the direction of a federal officer and failure to warn claims arising from exposure to asbestos

because "[t]he government in no way restricted [the defendant's] ability to notify individuals of the

presence of asbestos in the work environment. ").  *Cf. In re Wireless Tel. Radio Frequency

Emissions Prods. Liab. Litig.*, 327 F. Supp. 2d 554, 563 (D. Md. 2004) (holding that manufacturers

of cell phones were not "acting under" a federal agency so as to permit removal of products liability

actions against them where, although regulations promulgated by the Federal Communications

Commission ("FCC") specifically directed manufacturers to manufacture, test, and sell only cell

phones emitting approved levels of radio frequency radiation, the FCC provided only general

guidance and did not prohibit the manufacturers "from providing additional safeguards or

information to consumers").

b.        **Colorable Federal Defense**

Finally, the Court concludes that Union Carbide has failed to proffer a colorable federal defense.   Union Carbide invokes the so-called "government contractor defense" or "military contractor defense."  In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the Court held that a private contractor may invoke a federal affirmative defense to potential liability under state law for design defects in products or equipment that it produces for the United States, provided that the contractor can show that:  (1) the United States approved reasonably precise specifications for the products or equipment; (2) the products or equipment conformed to those specifications; and (3) the contractor warned the United States about any dangers known to the contractor but not to the United States.  *See id.* at 512.  *See also Lambert v. B.P. Prods. N. Am., Inc.*, Civil No. 04-347-GPM, 2006 WL 924988, at \*6 (S.D. Ill. Apr. 6, 2006); *Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 152-53 (D. Me. 2005); *Freiberg*, 245 F. Supp. 2d at 1151.  According to the *Boyle* Court, the first two conditions assure that the United States actually considered and approved the design in question, placing the suit in the area of "discretionary function."  487 U.S. at 512.  The third condition creates an incentive for manufacturers to disclose known risks in the design or manufacture of the products or equipment.  *See id.*  The elements of the test ensure that there exists a "significant conflict" between a federal interest and state law warranting the displacement of state tort law.  *Id.* at 509.  To prevail on the government contractor defense, a defendant bears the burden of proving all three elements of the *Boyle* standard.  *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).

The *Boyle* standard is not, on its face, applicable to failure to warn cases.  *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) (acknowledging that, on its face, "the rule

announced in *Boyle* applies only to design claims[.]").  This has prompted some courts to conclude that the government contractor defense has no application in a case based on a failure to warn. *See, e.g., Epperson v. Northrop Grumman Sys. Corp.*, No. 4:05CV2953, 2006 WL 90070, at *5 (E.D. Va. Jan. 11, 2006) ("[I]n . . . thousands . . . of previous asbestos cases . . . this court [found] that failure to warn cases are not subject to government contractor immunity[.]"); *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 403 (E.D. Va. 1997) ("[I]n the thousands of asbestos cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in 'failure to warn' cases."). *See also Oliver*, 96 F.3d at 1003 (noting that "design defect and failure to warn claims differ practically as well as theoretically" for purposes of the government contractor defense).  At a minimum, courts have restricted the applicability of the government contractor defense in failure to warn cases to situations in which the government's approval or prohibition of certain warnings has precluded a contractor from complying with state-law duties to warn.

In *Oliver* the Seventh Circuit Court of Appeals explained that, to be insulated under government contractor immunity for failure to warn, a defendant must show that "the government exercised its discretion and approved certain warnings."  96 F.3d at 1003.  This view is consistent with the language of *Boyle*.  In *Boyle* the Court, to illustrate the proper application of government contractor immunity, suggested a hypothetical scenario focusing on the potential for conflict between state laws and federal contracts.  The hypothetical proposed the United States contracting for the purchase of an air-conditioning unit and specifying by contract the "cooling capacity but not the precise manner of construction[.]"  487 U.S. at 509.  The Court explained that a state law requiring that such units "include a certain safety feature would not be a duty identical to anything

promised the Government, but neither would it be contrary." *Id.* Because the contractor could comply with the "state-prescribed duty of care" and still follow the terms of the contract there would be no need for the state law to be preempted; thus, there would be no need for the contractor to be shielded by immunity. *See id. See also In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 810 (9th Cir. 1992) (quoting *Boyle*, 487 U.S. at 507) (noting that the government contractor defense "immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law," but this "displacement of ordinary tort liability . . . occur[s] only where . . . a . . . significant conflict . . . exists between an . . . identifiable federal policy or interest and the . . . operation . . . of state law."); *Adams v. Alliant Techsystems, Inc.*, 201 F. Supp. 2d 700, 707 (W.D. Va. 2002) (noting that "the productions of munitions for the Army is uniquely a federal interest," but also that "defendants have not demonstrated that the duty of care defendants owe their employees conflicts with or even burdens defendants' federal regulatory or contractual obligations.").

In the specific context of asbestos cases, the *Boyle* standard means that, even if a federal contract mandates the use of asbestos in a certain product, yet provides no requirements as to the warnings to be furnished regarding exposure to asbestos, a contractor could comply with everything "promised the Government" while at the same time following the "state-prescribed duty of care" both to warn regarding asbestos exposure and to create procedures to avoid potentially fatal exposure to asbestos dust. *Boyle*, 487 U.S. at 509. Accordingly, in such cases courts generally find that the government contractor defense does not apply, absent evidence that the government mandated specific warnings or prohibited warnings. *See Westbrook v. Asbestos Defendants (BHC)*, No. C-01-1661 VRW, 2001 WL 902642, at **3-4 (N.D. Cal. July 31, 2001) (where the defendants

did not show that "the Navy required it to refrain from issuing warnings" about the dangers of asbestos, there was "no causal connection between the acts performed under the government's orders and the claims brought by plaintiffs" and "no colorable military contractor defense to a failure to warn claim"); *Faulk*, 48 F. Supp. 2d at 664-65 (holding that because the government provided no direction or control as to warnings with respect to asbestos, there were "no specifications . . . sufficient to invoke the *Boyle* contractor defense"); *Nguyen v. Allied Signal, Inc.*, No. C 98-03616 SI, 1998 WL 690854, at *3 (N.D. Cal. Sept. 29, 1998) (no colorable federal defense where "defendants have produced no evidence that their contracts with the United States government contained contractual obligations specifically prohibiting them from placing warnings on their products" regarding asbestos exposure); *In re Joint E. & S. Dist. Asbestos Litig.*, 715 F. Supp. 1167, 1169 (E.D.N.Y. 1988) (where "federal specifications were silent on the matter of warnings, [and] defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications," the defendant failed to establish the government contractor defense). *Cf. Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 401 (5th Cir. 1998) (denying a motion to remand in part because the contractors hired to produce Agent Orange failed to put warnings on the product only because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract.").  In this instance, Union Carbide has failed to point to any government action either mandating a warning or prohibiting a warning that deprived Union Carbide of the power to determine an appropriate warning.  In the absence of evidence of a significant conflict between a federal policy or interest and the operation of state law such as is required to implicate the government contractor defense, the Court concludes that Union Carbide has failed to proffer a colorable federal defense so as to permit removal pursuant to 28 U.S.C. § 1442(a)(1).  This

case will be remanded to state court for lack of subject matter jurisdiction.

### III. CONCLUSION

Union Carbide's request for a stay of these proceedings (Doc. 3, 5) is **DENIED**.  Weese's request for remand of this case to state court for lack of subject matter jurisdiction (Doc. 34) is **GRANTED**.  Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois.

**IT IS SO ORDERED.**

DATED: 10/3/07

s/ *G. Patrick Murphy*
G. Patrick Murphy
United States District Judge